IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TANIESHEIA HARDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16 C 1931 |
| ) | |
| COMCAST, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiff in this case, Taniesheia Harden, was fired from her job as a supervisor at a Comcast customer service call center in June 2015. She is an African-American woman over the age of forty with diagnosed psychiatric conditions including PTSD and depression, and she has sued Comcast, alleging that her termination was unlawfully motivated by her race, age, and / or disability. She also alleges unlawful retaliation and a violation of the Illinois Personnel Records Review Act. Comcast has moved for summary judgment.

## Background

Harden began working for Comcast in 2000. Most recently, she was a supervisor at Comcast's call center in Tinley Park, Illinois, where she was responsible for reviewing billing-related customer-service complaints.

In the summer of 2014, Harden took a medical leave of absence from her job. She testified that she informed her direct supervisor, Robert Signore, that her absence

was caused by her mental health symptoms stemming from post-traumatic stress disorder (PTSD) and depression. While she was away, an interim supervisor named Regina Coleman temporarily took over her responsibilities.

Just after she returned in October, Comcast conducted an audit purportedly to determine whether supervisors were handling complaints in a timely manner. Under Comcast's policies, if the agent who fields a complaint cannot resolve it, he or she creates an "escalation resolution ticket" that the supervisor must handle within a fixed amount of time. Relying on the audit data, Comcast gave a final written warning to any supervisor who complied with the ticketing procedures less than 65% of the time.

In January 2015, Harden received a final written warning because the audit showed only 56% compliance. Harden testified that at that point one of her superiors, Andre Brown, gave her the tickets on which she was audited. She recalled that there were about seventy or eighty such tickets, and that when she reviewed them she found that twenty-seven of them had in fact been handled by Signore or Coleman. Harden also testified that the audit period began during her leave of absence and included time after her return to work when she was unable to access the company's systems to process tickets. She sent an e-mail detailing these objections to the audit procedure to her superiors, including Andre Brown and Hilda Toscano, but she contends that Comcast took no actions to address these perceived errors.

Harden testified that in February she complained to a human resources employee that she had been discriminated against on the basis of her age, race, and disability. She also testified that she repeated those same complaints to her superiors in May.

2

In June 2015, Harden was placed on administrative leave for allegedly sending confidential information to an employee via e-mail two months earlier. During her administrative leave, Comcast conducted a second audit of the supervisors. The audit results indicated that Harden again failed to meet the 65% threshold, and she was terminated.

Harden filed this suit, contending that her firing was unlawfully motivated by her race in violation of Title VII, her disability in violation of the Americans with Disabilities Act (ADA), and her age in violation of the Age Discrimination in Employment Act (ADEA). She also alleges that Comcast retaliated against her after she complained of discrimination in May 2015 and violated the Illinois Personnel Record Review Act (IPRRA) by failing to disclose documents she requested from her personnel file. Comcast has moved for summary judgment. For the reasons stated below, the Court grants summary judgment in Comcast's favor on the IPRRA claim but otherwise denies Comcast's motion.

## Discussion

To obtain summary judgment, the moving party must show that there is no genuine dispute regarding any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Simpkins v. DuPage Hous. Auth.*, 893 F.3d 962, 964 (7th Cir. 2018). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Dunn v. Menard, Inc.*, 880 F.3d 889, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.*

3

In considering whether the evidence is sufficient for the plaintiff to withstand summary judgment in an employment-discrimination case, courts in the Seventh Circuit no longer distinguish between "direct" and "indirect" evidence of discrimination. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Instead, the court considers all relevant evidence "as a whole" to determine if it "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.*

**A.     Disability discrimination**

A plaintiff alleging disability discrimination in employment must show that she is disabled, she is otherwise qualified to perform the essential functions of the job, and her disability caused an adverse employment action. *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017).

**1.     Disability status**

Comcast argues that it is entitled to summary judgment on Harden's ADA claim because Harden is not disabled within the meaning of 42 U.S.C. § 12112(a). The ADA's definition of disability encompasses a "physical or mental impairment that substantially limits one or more major life activities" of an individual. *Id.* § 12102(1)(A).

A reasonable jury could conclude that Harden is disabled. She cites medical records showing that she has been diagnosed with PTSD and depression. The records also reflect mental health symptoms that interfere with her ability to work, concentrate, communicate, and sleep, all of which are major life activities under the ADA. *See id.* § 12102(2)(A). These observations by her treating physician are consistent with her 2014 leave of absence, during which Harden contends she was unable to work because of

4

the severity of her symptoms.

Comcast argues that no reasonable jury could find that Harden is disabled because she testified that she was able to perform all the functions of her job without disability accommodations and because she drove herself to her deposition in this case. But the fact that Harden could come back to work or perform other tasks after she began receiving appropriate medical treatment does not undermine her claim of disability. *See* 42 U.S.C. § 12102(4)(E)(i) ("ameliorative effects of mitigating measures" including medication do not affect the disability determination); *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1173 (7th Cir. 2013). In addition, Harden testified that she asked her physician not to document her requests for disability accommodations so that she could raise those issues with her superiors independently. This testimony, if believed, would permit a reasonable jury to conclude that Harden was disabled notwithstanding the lack of documented work restrictions in her later medical records.

### 2. Qualification

Qualification is determined by a two-step test: the individual must (1) satisfy any educational or occupational prerequisites for the position and (2) be able to perform the essential functions of the job. *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). Comcast does not dispute that Harden possessed the required qualifications but argues at step two that the audit results showed that she was unqualified.

Harden has pointed to sufficient evidence to permit a reasonable jury to conclude that she was qualified for her job. First, she introduced evidence that casts doubt on the validity and fairness of the audits. She testified that she was audited on twenty-seven tickets that other supervisors completed during and after her leave of absence—that is,

5

tickets for which she was not responsible. She also testified that her superiors took no corrective action after she pointed out this apparent mistake. In addition, a jury could credit Harden's testimony that her superiors audited more tickets than they acknowledged in the audit summary; although Harden testified that she was handed a stack of seventy or eighty tickets, the audit summary states that only forty-two were reviewed. This testimony, if believed, would allow a reasonable factfinder to reject the legitimacy of the audits as both a metric of her qualifications and a genuine reason for her termination.

Second, Harden has introduced evidence that, notwithstanding the audit results, she satisfied the prerequisites for her job and could perform essential job functions. She testified that she was able to perform her job responsibilities "100%." Harden Dep., dkt. no. 85, at 101:3-14. She also points to her favorable 2014 performance evaluation and the absence of any previous disciplinary actions. Taken together with the evidence that the first audit was flawed or unreliable, this evidence is sufficient to create a genuine factual dispute regarding Harden's qualifications.

### 3. Causation

Comcast next argues that Harden cannot point to sufficient evidence that she was terminated because of her disability. In particular, it emphasizes the two failed audits and contends that no reasonable jury could conclude that her mental health issues—rather than the audit results—motivated her termination. A plaintiff may show that discrimination caused her termination with evidence of

> (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the

employer offered a pretextual reason for an adverse employment action. *Monroe*, 871 F.3d at 504.

The evidence that the audit was conducted unfairly or arbitrarily is relevant to the question of causation because it would permit a reasonable jury to conclude that Comcast's stated reason for Harden's firing was pretextual or phony and that the decision was actually motivated by discriminatory animus. *See Baines v. Walgreen Co.*, 863 F.3d 656, 665 (7th Cir. 2017). And the timing of the audit permits a reasonable inference that the peculiarities of the first audit were a direct response to her disability-related leave of absence. Harden testified that the audit period began before she even returned from her leave, just a few months after she informed her superiors about her mental illness. Harden also testified that she was audited on tickets that were completed by the interim supervisors who handled her responsibilities during her medical leave. This timing, though not conclusive proof of discriminatory motive, provides context for the allegedly unfair or arbitrary procedures used during the first audit and supports a reasonable inference that Comcast's real motivation for firing Harden was her disability.

Considering the evidence as a whole, the Court concludes that a reasonable jury could find that Harden was disabled, qualified for her job, and fired because of her disability. The Court therefore denies Comcast's motion for summary judgment with respect to count three of the amended complaint.

**B.    Age discrimination**

Harden's age-discrimination claim can withstand summary judgment if there is a triable issue of fact regarding whether age discrimination motivated her termination. *See Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009).

7

As with the disability-discrimination claim, the evidence of flaws in the audit procedure also supports Harden's claim of age discrimination under the ADEA because it suggests that Comcast lied about its stated reason for termination. Harden points to additional evidence that would permit a jury to conclude that her firing was motivated by her age. She testified during her deposition that one of her direct superiors, Hilda Toscano, remarked in April 2015 that Harden "fail[ed] to understand simple changes in the business" because she was "an older employee." Harden Dep., dkt. no. 85, at 316:11-24. If a jury believes that Harden's direct supervisor made this comment just two months before Harden was fired, it could rely on this as evidence of age-based animus that supports Harden's claim of age discrimination. *See Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2000) (cautioning courts "not to dismiss as irrelevant damaging remarks" that suggest a discriminatory motive).

Although this statement standing alone might not suffice to create a genuine issue material fact because it was not made in reference to her firing, *see Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007), *overruled on other grounds by Ortiz*, 834 F.3d at 765, at the summary judgment stage the Court must consider the evidence as a whole, *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 725 (7th Cir. 2018). Considering Toscano's comment against the backdrop of the rest of the evidence, including the allegedly flawed audit process, the Court concludes that Harden has pointed to sufficient evidence to withstand summary judgment on her age-discrimination claim.

**C.     Race discrimination**

Harden's evidence regarding the audit procedure is also relevant to her race-

discrimination claim because it would allow a reasonable jury to find that the stated reason for her termination is pretextual and false. Although this claim presents a closer question than the claims of age and disability discrimination because it is not supported by additional circumstantial evidence that race in particular motivated her firing, the claim may nonetheless withstand summary judgment because "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000); *see also Baines*, 863 F.3d at 665. The Court therefore concludes that Harden has presented sufficient evidence to withstand summary judgment on count three.

**D.     Retaliation**

In count four of the amended complaint, Harden alleges that she was fired in retaliation for complaining to her supervisors about race, age, and disability discrimination. A plaintiff alleging unlawful retaliation under Title VII, the ADEA, or the ADA must show that "(1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the two." *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) (Title VII); *see also Rowlands v. UPS – Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018) (ADA); *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012) (ADEA).

The parties do not dispute that Harden engaged in protected activity by complaining to her superiors specifically about the alleged discrimination. *See Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 551 (7th Cir. 2017) (ADA); *Skiba*, 884 F.3d at 718 (Title VII and ADEA). Instead, the parties disagree about whether there is

evidence of causation. In cases of discharge, the plaintiff must point to evidence that "retaliation was the 'but for' reason for her termination." *Rowlands*, 901 F.3d at 801. Circumstantial evidence of retaliation can include suspicious timing, differential treatment of similarly situated employees outside the protected class, and evidence that the employer's proffered reason for the adverse employment action was pretextual. *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). Though suspicious timing alone is usually insufficient to demonstrate causation, it is sometimes probative. *Id.*

In this case, the circumstances of Harden's firing are sufficiently suspicious to permit a jury to infer that retaliation was the reason for her termination. Notably, she was placed on administrative leave in June for an e-mail she sent two months earlier in April, one month after she complained about discrimination to her superiors in May. Comcast attempts to characterize this delay as innocent, alleging that Harden's superiors were not aware of the e-mail until June. A jury could reasonably disbelieve that explanation, however, because one of Harden's superiors received the original e-mail.

Harden also argues that the circumstances surrounding her administrative leave suggest a retaliatory motive. First, she was placed on administrative leave pending further investigation for sending the April 2015 email even though, as one of her superiors testified, that infraction was not serious enough to warrant termination. As Harden argues, a jury could reasonably disbelieve this explanation because it is unclear what "investigation" Comcast needed to undertake given that the totality of her alleged wrongdoing consisted of sending a single e-mail that Comcast already had in its possession. Harden also points to the timing of the second audit, which was conducted

just a few days after she was placed on leave. This sequence of events supports a reasonable inference that Comcast was searching for a justification to terminate Harden, and that its stated reasons masked an ulterior, retaliatory motive.

Because Harden has pointed to sufficient evidence to permit a reasonable jury to conclude that Comcast retaliated against her for complaining about age, race, or disability discrimination, the Court denies summary judgment with respect to count four.

E.      **Personnel Record Review Act**

In count five of Harden's amended complaint, she alleges that Comcast failed to produce documents from her personnel file in violation of the Illinois Personnel Record Review Act, 820 ILCS 40/2. Comcast argues that it is entitled to summary judgment on this claim because the Court lacks supplemental jurisdiction over the alleged non-disclosure. It also argues that the requested records were exempt from the IPRRA under 820 ILCS 40/10(f), which exempts records "relevant to any other pending claim between the employer and employee which may be discovered in a judicial proceeding." Finally, Comcast contends that Harden has not been harmed by any non-disclosure because she eventually received all the documents she requested.

Comcast's jurisdictional argument is without merit. A court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). This requirement is satisfied "when the supplemental claim involves the same parties, contracts, and course of action as the claim conferring federal jurisdiction." *Prolite Building Supply, LLC v. MW Mfrs., Inc.*, 891 F.3d 256, 258 (7th Cir. 2018). Harden's PRRA claim satisfies these requirements because it concerns

Comcast's alleged non-disclosure of records that were used in her termination, and Harden alleges that Comcast deliberately concealed those records because its stated reasons for firing her were pretextual. This factual nexus satisfies the jurisdictional requirement of section 1367(a).

Comcast is entitled to summary judgment on this claim, however, because Harden failed to respond to Comcast's arguments that the IPPRA claim is not cognizable under 820 ILCS 40/10(f) and that she has not been harmed by the alleged non-disclosure. These omissions from the reply brief forfeit any counterarguments, and Comcast is therefore entitled to summary judgment on count five. *See Ennin v. CNH Indus. Amer., LLC*, 878 F.3d 590, 596 (7th Cir. 2017).

**Conclusion**

For the foregoing reasons, the Court grants summary judgment in favor of defendant on count five of plaintiff's complaint but otherwise denies defendant's motion for summary judgment [dkt. no. 63]. The case is set for a status hearing on December 21, 2018 at 9:15 a.m. for the purpose of setting a trial date and discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 18, 2018